IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CLEOTIS JOHNSON, KENNETH LOWE,          *
JAMES BUTLER, and WILLIE MOORE,         *
                                        *
            Plaintiffs,                 *
                                        *
vs.                                     *        No. 4:05CV00794 SWW
                                        *
ARKANSAS STATE HOSPITAL, GLENN          *
SAGO, LARRY JORDAN, and CHARLES         *
SMITH,                                  *
                                        *
            Defendants.                 *

**Memorandum Opinion and Order**

Before the Court is defendants' motion for summary judgment.  Plaintiffs responded to

the motion and defendants filed a reply to the response.  After careful consideration of the

motion, response, reply, briefs, statements of fact, and exhibits,  the Court finds the motion

should be granted.

**Background**

The Arkansas State Hospital ("ASH") is a state-owned and operated acute psychiatric

care hospital.  It is operated by the Division of Behavioral Health Services ("DBHS"), which is

under the Department of Health and Human Services, a department of the executive branch of

the State of Arkansas.  Charles Smith is the administrator of the ASH.  Glenn Sago is the former

administrator of the hospital, and is now an assistant director with DBHS.  Larry Jordan was the

chief of the Office of Public Safety at the ASH until 2004.  He left the employ of the hospital in

2005.

Plaintiffs are a group of two current and two former African-American employees of the ASH. James Butler and Cleotis Johnson were terminated from the hospital in 2004 and 2005, respectively. Willie Moore and Kenneth Lowe are still employed by the hospital. Each plaintiff filed at least one Charge of Discrimination with the EEOC, and each has received his notice of dismissal and Right to Sue letter. Plaintiffs filed a complaint in federal court on May 25, 2005, and an amended complaint on October 28, 2005. They name the ASH; Glenn Sago in his official and individual capacities; Larry Jordan in his individual capacity only; and Charles Smith in his official and individual capacities.

Plaintiffs' claims are brought pursuant to some or all of the following federal and state laws: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. §§ 1981 and 1983; the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 *et seq.*; and wrongful discharge. Plaintiffs seek injunctive relief as well as compensatory and punitive damages.

In their motion for summary judgment, the ASH, Sago, and Smith argue plaintiffs' claims against them in their official capacities should be dismissed based upon sovereign immunity. Defendants Smith, Sago, and Jordan assert they are not subject to suit in their individual capacities and that they are protected by qualified and statutory immunity. They further argue plaintiffs base their claims on actions that do not qualify as adverse employment actions and some of their claims are time-barred. Defendants also contend they offered lawful, legitimate and non-discriminatory reasons for the employment decisions made and plaintiffs have no evidence to establish those reasons are pretextual.

**Standard of Review**

2

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility for informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)(quoting Fed.R.Civ.P. 56(e)). The non-moving party sustains this burden by showing that "there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal rather than factual. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995).

**Discussion**

Individual employees, including supervisors, may not be held personally liable under Title VII. *See Roark v. City of Hazen,* 189 F.3d 758 (8th Cir. 1999) (supervisors cannot be held individually liable as an employer); *Smith v. St. Bernards Reg'l Med. Ctr.,* 19 F.3d 1254 (8th Cir. 1994) (Title VII liability can only attach to employers); *Lenhardt v. Basic Inst. of Technology,* 55 F.3d 377, 381 (8th Cir.1995) (Title VII liability for unlawful discrimination in the workplace imposed only on the employing entity). Plaintiffs agree their Title VII claims against defendants Sago, Jordan, and Smith in their individual capacities should be dismissed.

The Eighth Circuit holds that a § 1981 race discrimination claim may not be brought directly against a state actor but must be brought under § 1983. *Artis v. Francis Howell North Band Booster Ass'n,* 161 F.3d 1178, 1181 (8th Cir.1998). Therefore, plaintiffs' § 1981 claims for discrimination will be construed as claims for violations of the equal protection clause and § 1981 brought under § 1983. *Lockridge v. Bd. of Tr. of the Univ. of Ark.,* 315 F.3d 1005, 1007 (8th Cir. 2003).

A § 1983 damages claim against a state officer in his official capacity is the same as a suit against the state itself. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). The Eleventh Amendment bars such suits against a state unless the state has waived that immunity or Congress has abrogated it under § 5 of the Fourteenth Amendment. *Id.* at 66. The State of Arkansas has not waived its immunity, and Congress has not abrogated Arkansas' Eleventh Amendment immunity under 42 U.S.C. § 1983. *See Quern v. Jordan,* 440 U.S. 332, 345 (1979). Plaintiffs agree that their § 1983 claims for monetary damages against the ASH, and Smith and Sago in their official capacities, should be dismissed.

Plaintiffs claim defendants violated Title VII by discriminating against them on the basis of race and/or sex and retaliating against them for engaging in protected activity.  They also bring claims of discrimination and retaliation in violation of the 14th Amendment and § 1981, and allege violations of the Arkansas Civil Rights Act ("ACRA").  In addition, Johnson claims defendants violated his right to free speech under the First Amendment and wrongfully discharged him.

The *McDonnell Douglas* burden-shifting framework governs all of plaintiffs' discrimination claims.  *Lockridge, supra,* 315 F.3d at 1013; *Chambers v. Wynne Sch. Dist.,* 909 F.2d 1214 (8th Cir. 1990)(*McDonnell Douglas* test has been used to evaluate a plaintiff's *prima facie* showing of discrimination for both § 1981 and § 1983 claims); *Davis v. KARK-TV, Inc.,* 421 F.3d 699 (8th Cir. 2005) (Title VII disparate treatment claims, § 1981 claims, and ACRA claims analyzed in the same manner).

Under *McDonnell Douglas,* the plaintiffs must first establish a *prima facie* case of discrimination. The burden of production then shifts to defendants to present a legitimate reason for the allegedly discriminatory action. *McDonnell Douglas,* 411 U.S. at 802.  If defendants do so, the burden shifts back to plaintiffs to establish that the asserted legitimate reasons were merely a pretext for a discriminatory action. *Id.* at 804.

To establish a *prima facie* case of discrimination, a plaintiff must show (1) he is a member of a protected class, (2) he was qualified for his position, and (3) he suffered an adverse employment action under circumstances permitting an inference that the action was the result of unlawful discrimination.  *Johnson v. Ready Mix Concrete Co.,* 424 F.3d 806 (8th Cir. 2005).  The elements of a retaliation claim under § 1981 and Title VII are (1) protected activity, (2)

subsequent adverse employment action, and (3) a causal relationship between the two.  *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1060 (8thCir. 1997).

**James Butler**

James Butler began his employment with the ASH as a Security Officer I in December 1998.  He was promoted to Security Officer II in June of 2000, where he remained during the duration of his employment with defendants.  Butler did not want to attend the police academy to become a certified officer, so he never became a certified law enforcement officer.  Butler injured his shoulder in December 2001.  He was placed on light duty, working the control booth for two to three months.[1]  He re-injured his shoulder in October 2002 and later had surgery.  He was either on leave or assigned light duty from the 2002 injury until April 21, 2004, when his physician reported Butler had reached maximum benefit from the surgery and released him to modified duty.[2]

Butler was working in the control booth until April 4, 2004, when he was removed because of an allegation that he had been disrespectful to someone on the nursing staff.   Butler says Jordan refused to tell him who made the complaint.  On May 18, 2004, Butler was exonerated.  Butler was not reassigned to the control booth; instead, he was given duties as check point security and grounds security.  Butler filed an EEOC complaint on May 11, 2004, alleging he had been retaliated against, *i.e.* removed from the control booth, because he had filed a previous EEOC charge of discrimination.  He received a right-to-sue letter but did not pursue a lawsuit.

---

[1]Defs.' Br. in Supp. Mot. Summ. J., Ex. 32.

[2]*Id.*, Ex. 33.

On June 16, 2004, George Bryant, Human Resources Director at the ASH, wrote Dr. Burns, Butler's physician, asking him to indicate what specific duties Butler could not perform.[3] Dr. Burns reviewed the primary functions of Butler's job and indicated that in every area, there were duties Butler could not perform.[4]  On September 7, 2004, Butler was terminated from his position.[5]  Butler filed an EEOC Charge on October 14, 2004, alleging discrimination on the basis of disability[6] and retaliation.

Butler claims he was terminated because of his race.  He says there is a  white security officer, Glen Rice, who had open heart surgery in 2002 and lung cancer in 2003.  Butler claims Rice was given light duty from 2002 until at least mid-2005. According to defendants, Rice was placed on light duty in April 2002 for approximately one month.  His physician's prescription stated that Rice could: "[R]eturn to light duty 8 April 2002.  Advance as tolerated to full duty in [about] 1 month."[7]  According to Lt. Lipscomb, who supervised both Butler and Rice, Rice has been placed on light duty from time to time since 2002, but at all time has been able to perform at least some of the essential functions of his job.  Lipscomb says he has never received a statement from Rice's physician to indicate Rice was unwilling or unable to perform any of the essential functions of his job.[8]

---

[3]Pls.' Resp. to Mot. Summ. J., Ex. 2.

[4]Defs.' Br. in Supp. Mot. Summ. J., Ex. 34.

[5]*Id*., Ex. 35.

[6]Butler does not plead a cause of action based on disability in the action before this court.

[7]Defs.' Reply to Resp. to Mot. Summ. J., Ex. 3.

[8]*Id.*, Ex. 4.

Defendants claim the legitimate, non-discriminatory reason for terminating Butler was his physician's statement that he was unable to perform many of the essential functions of his job.  While instances of disparate treatment can support a claim of pretext, Butler has failed to carry his burden to show that he and Rice were similarly situated in all relevant respects.[9]  *See Harvey v. Anheuser-Busch, Inc.,* 38 F.3d 968 (8th Cir. 1994)(plaintiff has burden of proving he and disparately treated employee similarly situated in all respects).  Because there is no evidence from which a jury could find defendants' reasons for terminating Butler were pretextual, his claim of discrimination must fail.

Butler also alleges his termination was in retaliation for filing a previous EEOC charge.  He filed his first EEOC charge in January 2003, and although he received a Right to Sue letter in February 2003, he did not pursue a lawsuit.  He filed another EEOC charge in May 11, 2004, and again elected not to file a lawsuit.  Butler was terminated in September 2004.

"An inference of a causal connection between a charge of discrimination and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation."  *Arraleh v. County of Ramsey,* 461 F.3d 967, 977 (8th Cir. 2006)(internal quotation and citation omitted).  "We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim, *see Kipp v. Missouri Highway and Transp. Comm'n,* 280 F.3d 893, 897 (8th Cir.2002), and that a two-week interval was 'sufficient, but barely so.' *Smith v.*

---

[9]Butler asserts a claims of sex discrimination.  *See* docket entry 25, ¶ 65. During his deposition, Butler identified two white nurses who had been injured and were permitted to work at the hospital on light duty.  *See* docket entry 56, Ex. 55.  As defendants point out, nurses are not similarly situated in all respects to members of the public safety office, and Butler presents no evidence they were unable to perform the essential functions of their jobs.

*Allen Health Systems, Inc.,* 302 F.3d 827, 833 (8th Cir.2002)." *Lewis v. St. Cloud State University,* 467 F.3d 1133, 1138 (8th Cir.2006).  Butler's termination came four months after he filed his second EEOC charge.  He has no evidence of a causal connection between the two.

Lastly, Butler asserts a claim of sex discrimination, alleging that a female was hired to work the control booth.  As previously stated, Butler was assigned to the control booth for a couple of months after his first injury.  He apparently wanted to work in the booth on a permanent basis but was not assigned that position.[10]  Butler admits the ASH did away with the control booth operator position soon after the female came in as booth operator.[11]

Even if the control booth position were a full-time position, because this is a reverse discrimination case, Butler would have to show, in addition to the prima facie case, "that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Hammer v. Ashcroft,* 383 F.3d 722, 724 (8th Cir. 2004)(citing *Duffy v. Wolle,* 123 F.3d 1026, 1036 (8th Cir. 1997); *Woods v. Perry,* 375 F.3d 671, 673 (8th Cir. 2004) (same).  A plaintiff can show suspicious background circumstances by showing evidence that the defendant "is inclined to discriminate invidiously against males or something 'fishy' about the facts that raises an inference of discrimination." *Woods*, 375 F.3d at 674.  Here, as in any employment discrimination case, the ultimate burden of persuasion remains at all times with the plaintiff. *Id.*.

The Court finds Butler has failed to come forward with evidence raising a genuine issue of material fact as to the reasons for his termination and likewise  has failed to carry the burden

---

[10]Defs.' Br. in Supp. Mot. Summ. J., Exs. 50 & 52.

[11]*Id.*, Ex. 50.

of showing evidence that he was the victim of gender discrimination as to the control booth position.

**Cleotis Johnson**

Cleotis Johnson began his employment with the ASH in September of 1994 when he was hired as a Security Officer II.  About one year later, he was promoted to Public Safety Officer I, and in 1998 was promoted to Public Safety Officer II.  Two years later, he was again promoted, this time to a lieutenant position.  On February 23, 2005, Johnson filed an EEOC Charge alleging retaliation and discrimination because he was given duties that a security guard would be assigned even though Johnson was a lieutenant.  He received a Right to Sue letter two days later.  On April 25, 2005, Johnson was terminated, and on May 25, 2005, he and his co-plaintiffs filed the lawsuit before the Court.  On June 9, 2005, Johnson filed another EEOC Charge alleging his termination was the result of race discrimination and retaliation.  He received a Right to Sue letter on August 12, 2005.

In the complaint before the Court, Johnson alleges race discrimination and retaliation in violation of Title VII.  He claims he suffered continuous retaliation and harassment from Sago and Jordan after he complained in 2002 to Sago and others that Jordan was discriminating against black employees, and that his termination was based on discrimination and in retaliation for making prior complaints of discrimination.  He further alleges he was retaliated against after he was interviewed by the Disability Rights Center ("DRC"), the statutorily-authorized Protection and Advocacy Group for individuals with disabilities in Arkansas, and seeks relief for violations of his First Amendment and Fourteenth Amendment due process rights pursuant to 42

U.S.C. § 1983.  Johnson claims he was wrongfully discharged in violation of Arkansas public policy.

Defendants assert Johnson was terminated for insubordination and failure to cooperate in an investigation.[12]  Apparently, management staff at the ASH were conducting an investigation into allegations of patient abuse, and both Johnson and defendant Jordan were asked to take a polygraph examination.  Jordan took the polygraph examination and, according to Johnson, was found to be deceptive.  Johnson requested that he be able to consult with an attorney before submitting to the examination.  His request was denied and he was ordered to take the test immediately.  He refused and was terminated.

The policy cited in Johnson's termination requires agency employees to cooperate with investigations.  The Eighth Circuit has consistently held that violating an employer's policy is a legitimate, non-discriminatory reason for terminating an employee.  *See, e.g. Putnam v. Unity Health Systems,* 348 F.3d 732, 736 (8th Cir. 2003).  Johnson seems to attack the credibility of defendants' stated reason by arguing there was no legitimate reason for him to take the test because Jordan had already taken it and failed.  He further claims he has a statutory right pursuant to Ark. Code Ann. § 12-12-702 (Repl. 2003) not only to consult with an attorney before he is required to take the test but also to have an attorney present during the test.  He contends that under Ark. Code Ann. § 5-27-201 *et seq.* (Repl. 2006), he is a mandated reporter of known or suspected adult maltreatment and asserts he would have been subject to criminal liability if he had failed to report abuse of a hospital patient.

---

[12]*Id.*, Ex. 42.

Section 12-12-702 addresses the use of polygraph examinations in law enforcement investigations.  Defendants assert that this law which provides the right to consult with an attorney prior to undergoing a polygraph examination and to have an attorney present is not applicable here because the polygraph was requested pursuant to an internal administrative investigation, not a law enforcement investigation.  Defendants argue that even if Johnson failed a polygraph exam, such results are inadmissible in a criminal proceeding absent his consent.  *See* Ark. Code Ann. § 12-12-704 (Repl. 2003).

In addition to Title VII retaliation,  Johnson asserts his termination was in retaliation for cooperating with a DRC investigation of abuse at the ASH.  To establish a *prima facie* case of retaliation based on the First Amendment, Johnson, a public employee, must show that (1) he engaged in protected speech; (2) his interest as a citizen in making such speech outweighs the employer's interest in promoting efficient public service; and (3) his speech was a motivating factor in the adverse action taken against him.  *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 801 (8th Cir. 2004); *see Okruhlik v. Univ. of Ark.,* 395 F.3d 872, 878 (8th Cir. 2005)(noting the same analysis applies to First Amendment and Title VII retaliation claims); *Duffy v. McPhillips,* 276 F.3d 988 (8th Cir. 2002) (to establish a claim of unlawful First Amendment retaliation, a public employee must show that he suffered an adverse employment action that was causally connected to his participation in a protected activity).  Whether speech was a motivating factor "is a question of fact, but the sufficiency of the evidence to create an issue of fact is a question of law."  *de Llano v. Berglund,* 282 F.3d 1031, 1036 (8th Cir. 2002).

> Public employee speech is protected from retaliation, in certain circumstances, if the speech addresses a matter of public concern.  'So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate effectively

and efficiently.'  When the state is acting as the employer of a public employee, we focus 'on the role the employee . . . assumed in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties . . ; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution.' When the employee's speech includes matters of both public concern and personal interest, we

> must analyze the content, form, and context of the speech to determine whether the speaker was acting primarily as a concerned citizen or as an employee.  If the speech was mostly intended to further the employee's private interests rather than to raise issues of public concern, her speech is not protected, even if the public might have an interest in the topic of her speech.

*Bailey v. Dep't of Elementary and Secondary Educ.,* 451 F.3d 514, 518 (8th Cir. 2006)(internal citations omitted.).  In *Bailey,*  the Eighth Circuit held that a  psychologist who had consulted on state disability benefit claims, did not engage in protected speech when he complained in a meeting about new methods the deputy director had adopted for determining benefit rates or when he wrote the assistant commissioner complaining about the deputy director.  The court held that "[w]hile Bailey's speech may have tangentially involved a matter of public concern, his speech was concerned primarily with furthering his own interests."  *Id.* at 519.  The court further held that Bailey's letter primarily involved personal conflicts with the deputy director, who was Bailey's supervisor.  *Id.* at 520.

Defendants maintain that Johnson's termination was not related to his cooperation with the DRC investigation but was instead the result of his insubordination and refusal to cooperate with an agency investigation.  However, even assuming *arguendo* that Johnson's termination was somehow linked to his role in the DRC investigation, defendants posit two reasons why his speech does not fall within First Amendment protections.  First, Johnson's speech to the DRC was exclusively within his official duties and thus falls squarely within the holding of *Garcetti v.*

13

*Ceballos,* ___ U.S. ___, 126 S.Ct. 1951 (2006).  In *Garcetti,* the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Id.* at 1960.  As an employee of the ASH, Johnson was required to cooperate with the DRC investigators, and would have been subject to disciplinary action had he refused.[13]  Department policy, which requires all facility officers to cooperate, places Johnson's speech squarely within the scope of his "official duties" as discussed in *Garcetti,* and removes First Amendment protections from that speech.  This remains true even if Johnson had been disciplined because of that speech.  Additionally, Johnson spoke only with DRC investigators, and made no effort to communicate his message to the public at large.

Defendants argue the second reason Johnson's speech falls outside First Amendment protections is because the ASH's Office of Public Safety, like a police or fire department, has a greater interest in unity and cooperation among its employees.  As such, its ability to regulate its employees' speech is entitled to greater deference than other types of public entities.  *Shands v. City of Kennett,* 933 F.2d 1337 (8th Cir. 1993) (public safety organizations have a more significant interest in regulating speech activities of employees)

The Court finds Johnson has failed to come forward with any evidence to support his claims.  There is no evidence of that he was retaliated against for complaining about discrimination or for cooperating with DRC.  He presents no evidence from which a jury could find that the reasons for his termination were a pretext for unlawful discrimination and retaliation.

---

[13]*Id.*, Exs. 48 & 49.

The Eighth Circuit has held that when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the supplemental state claims are in most cases dismissed without prejudice to avoid needless decisions of state law as a matter of comity.  *See Birchem v. Knights of Columbus*, 116 F.3d 310, 314 (8th Cir. 1997) (citations omitted).  However, where discovery is completed and the case ready for trial, a court does not abuse its discretion in taking up and granting summary judgment on issues of state law on which there is little basis for dispute.  *Id*.  Here, discovery is complete, the case ready for trial, and there is little basis for dispute as to the resolution of plaintiff's wrongful discharge claim under settled Arkansas law.  Accordingly, the Court will take up and resolve Johnson's wrongful discharge claim.

Johnson asserts his termination was wrongful and in violation of Arkansas public policy.  He bases this on his claim that he had the right under Arkansas law to have an attorney present during his polygraph examination, and it is against public policy to discipline an employee for exercising a right under state law.  "In finding a violation of public policy, we have stated that 'it is generally recognized that the public policy of a state is found in its constitution and statutes.'" *Palmer v. Council on Econ. Educ.,* 344 Ark. 461 (Ark. 2001)( internal citation omitted). Johnson points to Ark. Code Ann. § 12-12-702 which, as previously discussed, governs only polygraph exams conducted during a law enforcement investigation.  The ASH is exempt from the Employee Polygraph Protection Act of 1988, 29 U.S.C. § 2001 *et seq.* ("EPPA").  That Act places prohibitions on the use of polygraph examinations by employers.  Among other things, it prohibits an employer from requesting or requiring an employee to take or submit to a polygraph examination, as well as prohibits the employer from discharging an employee who refuses to

take or submit to such an examination.  *See* 29 U.S.C. § 2002(1) and (3).  These prohibitions are subject to a number of exemptions, however, and § 2006(a) provides that the EPPA does not apply "with respect to the United States government, any State or local government, or any political subdivision of a State or local government."

Johnson points to no other state statute or constitutional provision beyond § 12-12-702, which only governs polygraph exams conducted during a law enforcement investigation. Therefore, the Court finds Johnson's wrongful discharge claim must fail.

**Willie Moore**

Willie Moore began his employment with the ASH in 1999 as a Security Officer I in an extra help position..  In October 1999, he was placed into a permanent full-time position of Security Officer II.  In March 2000, he was promoted to Public Safety Officer I.  After successfully completing courses at the Police Academy in Camden, Arkansas, Moore was promoted to Public Safety Officer II in December 2001.   In 2003, he was promoted to the position of Sergeant.   In August of 2004, Moore was disciplined for an incident at the hospital. He received a 5-day suspension and was demoted to the rank of corporal.  Although Moore alleges a similarly-situated white sergeant was not disciplined for committing the same act, he submits no evidence in support of this allegation. He does admit he was wrong in the way he handled the situation for which he was disciplined, and that his demotion was rescinded shortly after the suspension.[14]

On January 28, 2005, Moore filed a Charge of Discrimination with the EEOC, alleging that since being promoted to sergeant, he has been treated less favorably than similarly situated

---

[14]*Id.*, Ex. 13.

white sergeants.  He complains he was given less training than other white sergeants; was not permitted access to the lieutenant's office while a white sergeant on the same shift was; was not permitted to make disciplinary decisions or be a member of disciplinary panels; and was suspended for four days in August of 2004, issued disciplinary points, and demoted to Security Officer II.

In order to establish a prima facie case of discrimination, a plaintiff must show that he suffered an adverse employment action.

> An employee suffers an adverse employment action when there is a 'tangible change in duties or working conditions' constituting 'a material employment disadvantage.' Our decision in *Kerns v. Capital Graphics, Inc.,* 178 F.3d 1011, 1016-17 (8th Cir.1999), provides:
>> The adverse employment action must be one that produces a material employment disadvantage. Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge. Minor changes in duties or working conditions that cause no materially significant disadvantage do not meet the standard of an adverse employment action, however.

*Baucom v. Holiday Companies,* 428 F.3d 764, 767 (8th Cir. 2005)(citations omitted).

Even though he alleged that the lack of training caused him to be ineligible for advancement to the rank of lieutenant, Moore testified that he had not been denied any training that would be required to become a lieutenant, and that he had never applied for a lieutenant position.[15]  Although Moore argues that Sergeant Morgan, a white officer, attended and received

---

[15]Defs.' Reply to Pls.' Resp., Ex. 1.

a great deal of training at the Arkansas Criminal Justice Center, he could not say what training Morgan had received that Moore had asked for and been denied.

Moore testified that Morgan had keys to the shift commander's office which also gave Morgan access to a computer and refrigerator.  The other individuals who had a key were defendant Jordan, the Chief of Public Safety, and Lt. Sanders, an African-American.[16]  Moore further testified there were many white public safety officers who did not have offices at the hospital.[17]

"Although 'actions short of termination may constitute adverse actions within the meaning of the statute,' 'not everything that makes an employee unhappy is an actionable adverse action.'" *Montandon v. Farmland Indus., Inc.,* 116 F.3d 355, 359 (8th Cir. 1997)(citations omitted).  The actions about which Moore complains do not constitute adverse employment actions and thus he cannot establish a prima facie case of discrimination or retaliation.  Further, by his own testimony, Moore demonstrates that the suspension and demotion was appropriate; therefore, that action was legitimate and non-discriminatory.

**Kenneth Lowe**

Kenneth Lowe began working at the ASH in February of 2004.  He was employed with another division of the agency from 1989 through 1999.  He was hired as a Security Officer II, and came in at a rate of pay higher than the base pay for that position.  In September 2004, Lowe and another officer were involved in restraining a patient when the patient was injured.  The two

---

[16]Defs.' Br. in Supp. Mot. Summ. J., Ex. 11

[17]*Id.*., Ex. 12.

officers, both African-American, were suspended for five days without pay and required to take crisis intervention training.  Lowe alleges that when defendant Jordan talked to him about the incident, Jordan threatened Lowe.[18]  He further alleges that suspension is not the normal procedure in such cases and that white security officers who used excessive force were not disciplined by Jordan and Sago.  Lowe appealed the suspension through the state employee grievance process, and the State Employee Grievance Appeal Panel ("SEGAP") ultimately affirmed the agency action and found no retaliation.  Lowe testified that his co-plaintiff Cleotis Johnson told him that defendant Larry Jordan and another officer used excessive force on a patient in 2003 but were not disciplined.  Lowe also testified that co-plaintiff James Butler told him about an incident in which a white officer was involved when a female patient suffered a broken arm.  According to Lowe, the officer was suspended five days.[19]  However, the record reflects that the white officer was suspended for 10 days and ordered to attend CPI training before returning to work.[20]

Lowe claims he applied for property room officer in March 2005 but was denied the position in retaliation. Lowe testified he told his shift supervisor, co-plaintiff Moore, that he was interested in the property room officer position.  Moore went to Lt. John Sanders, who told

---

[18]Concerning Lowe's claim that Jordan threatened him with physical harm, Lowe testified that when he was being suspended on September 28, 2004, Jordan stated to him: "I can take you down."  When Lowe disagreed, Jordan then reportedly replied: "You are not too big for me to take down."  Two weeks after this exchange, Lowe filed a complaint of terroristic threatening against Jordan with the Pulaski County Prosecuting Attorney's Office.  During deposition testimony, Lowe, who is six feet tall and weighs 367 pounds, was asked if he believed he could physically overpower Jordan.  Lowe replied: "Do I think it?  I know I could." Ex. 24, Defs.' Br. in Supp. Mot. Summ. J.

[19]Defs.' Br. in Supp. Mot. Summ. J., Ex. 53.

[20]*Id.*., Ex. 54.

Moore that Lowe could not get the position. Lowe testified he then went and put it in writing that he would like to be the property room officer and submitted a memorandum to Sanders.[21]   A few days later, he wrote another memorandum, asking Sanders to reconsider his decision, noting that Moore had told him he could have the position.[22]  Lowe admitted that the position of property room officer was not advertised.  He further testified it is not really a full time position but more an assignment of duties.[23]  On June 5, 2005, Lowe was hired as a Behavior Specialist at the ASH, a promotion for which he received an 8% salary increase.[24]

The only adverse employment action taken against Lowe was the September 28, 2004 five-day suspension.  The reason for the suspension was that Lowe used excessive force on a hospital patient that could have resulted in serious physical injury.  As previously stated, Lowe pursued that suspension through the employee grievance process.  The decision was affirmed by a SEGAP panel.  Lowe has offered no evidence from which a reasonable jury could conclude that the reason for his suspension was based on discrimination or retaliation.  Defendant offered a legitimate, non-discriminatory reason, and Lowe has not come forward with any evidence from which a jury could find the reason was pretextual.

**Conclusion**

---

[21] *Id.*, Exs. 25 & 26.

[22] *Id.*, Ex. 27.

[23] *Id.*, Ex. 26.

[24] *Id.*, Ex. 28.

For the reasons stated, the Court finds defendants' motion for summary judgment should be and is hereby granted.  Judgment will be entered accordingly.

DATED this 5th day of March 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE